UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIANA PAYTON,

          Plaintiff,

                                          Case No. 15-12222

v.                                      Hon. Denise Page Hood

AEROTEK, INC. et al,

          Defendants.
_____/

## ORDER GRANTING DEFENDANT TSI'S MOTION FOR SUMMARY JUDGMENT [# 22] AND DEFENDANT AEROTEK'S MOTION FOR SUMMARY JUDGMENT [# 24]

## I.     INTRODUCTION AND BACKGROUND

Plaintiff Briana Payton ("Payton") is suing Defendants Aerotek Incorporated ("Aerotek") and Title Source Incorporated ("TSI") alleging violations of 29 U.S.C. § 2611 *et. seq*, the Family Medical Leave Act ("FMLA"). Specifically, she alleges that Defendants interfered and retaliated against her in violation of the FMLA. (Doc # 1) Aerotek and TSI filed separate motions for summary judgment. (Doc # 22; Doc # 24)

For the reasons stated below, the Court **GRANTS** Defendants' Motions for Summary Judgment.

Aerotek provides supplemental staffing services to companies.  TSI is a title insurance agency connected to Quicken Loans that writes policies for underwriters and performs closing services.  (Doc # 22)

On January 28, 2013, Payton signed an employment agreement with Aerotek.  Payton began working for TSI on a temporary assignment on February 4, 2013.  Payton initially worked as a closing processor on Nancy Everett's, Director of Escrow, Chase Retail Team.  The closing processor position required her to perform four functions:  input, output, box, and final goals calls.

TSI claims that throughout Payton's tenure, she had multiple performance problems.  For instance, TSI alleges that Payton would clock into work, but would lollygag around for a few hours before actually working.  (Doc # 22 at 11; Ex. E, Everett Dep. 10:3-7)  TSI alleges that Payton consistently failed to meet production goals.  Specifically, she did not meet her goals in October 2013, November 2013, January 2014, or February 2014.  (Doc # 22 at 11; Ex. H)  Aside from failing to meet production goals, Payton allegedly had quality issues.  Everett informed Payton of these deficiencies, and in March 2014, Payton was warned about failing to meet her goals.  In July 2014, Payton failed to properly adjust a payoff resulting in $789.19 shortage.  (Doc # 22 at 12; Ex. J)

2

In May 2014, Payton informed TSI that she was pregnant and would have to take FMLA leave.  In September 2014, Payton failed to meet her production goal and caused another shortage in the amount of $306.55.

In October 2014, Payton was moved to Janine Henry's processing Send-Out team.  TSI claims that Payton's reassignment was due to Payton's performance issues, but Payton claims that she was reassigned because her team was disbanded, and everyone was reassigned to different teams.  While on Henry's team, Payton allegedly suffered from the same quality issues.  In November 2014, she failed to meet her goal.  In December 2014, she was placed on an improvement plan.  (Doc # 22; Ex. M)  On January 19, 2015, Payton began her FMLA leave.

According to TSI, in early 2015, it conducted a review of its temporary employees in order to determine to which ones it would extend permanent job offers.  The workers who were evaluated were assigned to TSI for at least 18 months.  TSI evaluated approximately 100 workers.  Everett and Henry found that Payton's work quality did not warrant a permanent position.  In March 2015, TSI decided to terminate Payton's assignment and informed Aerotek to inform Payton that she would no longer have a position with TSI.  (Doc # 22 at 15)  Payton was scheduled to return to work in April 2015.

Before the end of her FMLA leave, Payton called Henry on March 17, 2015 to inquire about her pre-leave work schedule.  Henry allegedly informed Payton

2:15-cv-12222-DPH-MJH   Doc # 35   Filed 03/29/17   Pg 4 of 13   Pg ID 666

that the schedule would remain the same.  (Doc # 28 at 7)  Payton claims that the next day, on March 18, 2015, Aerotek employee Tiffany Iposu called her and informed her that Payton's position was terminated.  Payton claims Iposu stated that she was unaware that Payton was on FMLA leave, but noted that her termination had nothing to do with performance, but rather the fact that Payton was not working because she had a baby and consequently her spot was filled.  (Doc # 27-1, Pg ID 435-37; Doc # 27-2, Pg ID 451-52)

Payton sues Aerotek and TSI alleging violations of the FMLA.  The Court cannot decipher which type of FMLA claim Payton alleges against each Defendant in her Complaint because she only states that TSI and Aerotek violated the FMLA. However, in her responses to Defendants' summary judgment motions, Payton states that TSI retaliated against her in violation of the FMLA, and Aerotek interfered with her job in violation of the FMLA.  Accordingly, the Court will examine (1) TSI's conduct under the retaliation theory; and (2) Aerotek's conduct under the interference theory.

## II.    STANDARD OF REVIEW

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986).  A fact is material if it could affect the outcome of the case

based on the governing substantive law. *Id*. at 248.  A dispute about a material fact is genuine if on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id*.

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id*. at 324.  The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.

1986).  The Court "need consider only the cited materials, but it may consider

other materials in the record."  Fed. R. Civ. P. 56(c)(3).  The Court's function at

the summary judgment stage "is not to weigh the evidence and determine the truth

of the matter but to determine whether there is a genuine issue for trial."

*Anderson*, 477 U.S. at 249.

## III.   ANALYSIS

Payton brings this action under the FMLA, which states "[i]t shall be

unlawful for any employer to interfere with, restrain, or deny the exercise of or the

attempt to exercise, any right provided under [the FMLA]."  29 U.S.C. §

2615(a)(1).  The Sixth Circuit recognizes two distinct theories under the FMLA:

(1) the "interference" theory, and (2) the "retaliation" theory.  *Seeger v. Cincinnati

Bell Telephone Co.*, 681 F.3d 274, 282 (6th Cir. 2012).  Under the "interference"

theory, "[i]f an employer interferes with the FMLA-created right to medical leave

or to reinstatement following the leave, a violation has occurred, regardless of the

intent of the employer."  *Id.* (internal quotations and citations omitted).  But, under

the retaliation theory, the intent of the employer is relevant, and the inquiry is

"whether the employer took the adverse action because of a prohibited reason or

for a legitimate nondiscriminatory reason."  *Id.*

## A.      TSI's Conduct Under the Retaliation Theory

Payton alleges TSI retaliated against her by terminating her position because she took FMLA leave.  To establish a *prima facie* case of FMLA retaliation, Payton must show that:  (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.  *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012). To show a causal connection, a plaintiff "must produce sufficient evidence to support an inference that [the defendant] took the adverse employment action because" the plaintiff engaged in protected activity. *Ozier v. RTM Enterprises of Georgia, Inc.*, 229 Fed. App'x 371, 377 (6th Cir. 2007).  If the defendant provides a legitimate, nondiscriminatory reason for terminating the plaintiff, the burden shifts back to the plaintiff to show that the defendant's stated reasons are a pretext for unlawful discrimination.  *Id.*  Temporal proximity alone cannot be the sole basis for finding pretext.  *Seeger*, 681 F.3d at 285.  However, temporal proximity coupled with other independent evidence may indicate pretext.  *Id.*

The only element in dispute is whether there was a causal connection between Payton's FMLA leave and the adverse employment action she suffered

that was her termination.  TSI states that it had a legitimate reason to end Payton's employment; her job performance was insufficient.  As proof, TSI identifies Payton's failure to meet production goals, her low-quality scores, and her conduct that led to two shortages.  *See* Doc # 22; Ex. H; Ex. L.  In addition, Everett stated that she had to speak to Payton regarding her negative attitude toward her client, Chase Bank.  (Doc # 27-3)

Payton fails to establish a material fact to show that her termination occurred only because she took FMLA leave.  Payton's *prima facie* case fails.  Her employment record shows that she had numerous performance problems.  She failed to meet her production goals at least five times.  She performed below the 90 percent quality control expectation eight times, the most recent being in November 2014.  (Doc # 22-9; Doc # 22-14)  And twice she committed errors resulting in shortages two months apart.  Given these performance issues, Payton has failed to show that there is a genuine issue of material fact regarding whether Payton's FMLA leave was the but-for cause of her termination.

Nor has Payton shown that TSI's proffered reason was a pretext.  Even if Payton established a *prima facie* showing retaliation, Payton has failed to rebut TSI's reason for terminating her as pretextual.  Plaintiff states, "Title Source has not offered evidence of a legitimate, non-discriminatory reasons for the adverse employment action."  (Doc # 28 at 17)  However, according to the Sixth Circuit,

"poor performance is a legitimate, non-discriminatory reason for terminating a person's employment and is sufficient to satisfy [the defendant's] initial burden under the McDonnell-Douglas framework." *Parks v. UPS Supply Chain Sols., Inc*., 607 Fed. App'x 508, 514 (6th Cir. 2015).  Therefore, Payton needed to show by a preponderance of the evidence that TSI's proffered reason was a pretext. Payton failed to do this.  She only states in a conclusory fashion that "it is clear that Plaintiff has established a prima facie violation of FMLA § 2614 in that it is uncontested that Plaintiff took leave pursuant to the FMLA and that she was dismissed form her employment before returning from that leave."  (Doc # 28 at 19)  "Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment." *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008).

　　Accordingly, summary judgment is granted in favor of TSI.

## B.　　Aerotek's Conduct Under the Interference Theory

　　Payton alleges that Aerotek interfered with her right to employment by refusing to restore her to the same or a similar job position after her leave.  She argues that Aerotek and TSI are joint employers; therefore, Aerotek had a duty to place Payton in another employment position.  Aerotek did not address whether it is a joint employer.  Aerotek contends that Payton's claims fail as a matter of law

because it did not engage in an adverse employment action against Payton.  Only TSI had the ability to decide to terminate Payton's employment, not Aerotek.

It is unlawful for employers to "interfere with, restrain or deny the exercise of or attempt to exercise, any [FMLA] right provided."  29 U.S.C. § 2615(a)(1); *Grace v. USCAR*, 521 F.3d 655, 669 (6th Cir. 2008).  To establish a *prima facie* case of FMLA interference, also known as failure to restore, a plaintiff must show that: (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled.  *Id*.; *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006).  Employees returning from FMLA leave are not entitled to restoration unless their employment would have continued had they not taken FMLA leave.  *Grace*, 521 F.3d at 669.

Once a plaintiff establishes a *prima facie* case of FMLA interference, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason to justify its actions.  *Id*.  If the employer provides a legitimate reason, the burden shifts back to the plaintiff to show pretext.  *Id.* at 670.

Aerotek contends that Payton's employment with Aerotek was co-existent with her temporary assignment with TSI.  Accordingly, when her assignment with TSI ended, her employment with Aerotek ended.  Aerotek contends that it did not

take an adverse action against Payton; it cannot be held liable for the actions of TSI

because Aerotek is a staffing company and does not have control over the hiring

and firing conducted by its client TSI.  Aerotek only acts on the wishes of its

clients, in this case TSI.  If a client decides to terminate an employee, that is out of

Aerotek's hands.  *See Haddad v. Adecco, USA*, No. 5:04-CV-220, 2005 WL

3556060, at *3 (W.D. Mich. Dec. 29, 2005) ("The record shows that Adecco never

took adverse action against Plaintiff on any basis.  While Adecco did accept ACS's

decisions about Plaintiff's terminated placement and the failure to promote her to a

higher placement, Adecco had no choice in the matter because it was merely

supplying workers to ACS and ACS controlled its own workplace."); *see also,*

*Bond v. Sodecia N.A., Inc.*, No. 12-CV-15160, 2014 WL 2864895, at *12 (E.D.

Mich. June 24, 2014).

    The Court agrees that Payton's employment with Aerotek was contingent on

her assignment with TSI.  For instance, the first sentence of Payton's employment

contract states:

> Aerotek Professional Services, a division of Aerotek, Inc.
> ("Aerotek"), conditionally offers to employ Briana Payton in the
> capacity of Mortgage Support commencing on 02/04/13 at its client,
> Quicken Loans ("Client") for services with *the latter for a temporary
> period, to perform such duties and for such hours of work as may be
> assigned to you during the term of service*.

(Doc # 23-5 at 1) (emphasis added).  The contract states that Payton was to provide

services to TSI on a temporary basis, and TSI was to determine what work would

be assigned during Payton's term of service to TSI – not Aerotek.  Regarding

termination, the employment contract states:

> 8. <u>Termination</u> – you shall give a minimum of ten (10) business days
> notice should you decide to terminate your position with Aerotek.
> *You understand that the length of assignment is subject to the
> discretion and needs of the Client,* and therefore, a ten day notice from
> Aerotek may not be possible and Aerotek is not required to provide
> such notice . . ."

Payton's employment contract clearly states that the length of the assignment of

was at the discretion of TSI and not Aerotek.  Therefore, her employment with

Aerotek was directly linked to her assignment with TSI.  When her position with

TSI ended so did her employment with Aerotek.  Since TSI was the ultimate

decision maker regarding Payton's employment, Aerotek cannot be held liable for

TSI's decision to terminate.  Therefore, Aerotek is correct that Payton cannot

sustain a claim against Aerotek because it did not engage in an adverse

employment action against Payton.  *See Mcqueen v. Wells Fargo Home Mortg*, 955

F. Supp. 2d 1256, 1272 (N.D. Ala. 2013) ("The Court cannot allow a case against

[the agency] to proceed based on evidence showing that [the agency] simply

reported the wishes of its client, for mere conveyance does not show that [the

agency] took any adverse action against Plaintiffs.").

Accordingly, summary judgment is granted in favor of Aerotek.

## IV.   CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant TSI's Motion for Summary Judgment **(Doc # 22)** and Defendant Aerotek's Motion for Summary Judgment **(Doc # 24)** are **GRANTED.**

IT IS FURTHER ORDERED that this action is **DISMISSED WITH PREJUDICE**.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  March 29, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 29, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager
